# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-6227

WILLIAM D. COWAN, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 22, 2022                                        Decided June 13, 2022)

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Alex Kutrolli*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Selket N. Cottle*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before ALLEN, TOTH, and FALVEY, *Judges*.

FALVEY, *Judge*, filed the opinion of the Court. ALLEN, *Judge*, filed an opinion concurring in the judgment. TOTH, *Judge*, filed a concurring opinion.

FALVEY, *Judge*: Under the post-Veterans Appeals Improvement and Modernization Act (AMA) version of 38 U.S.C. § 5104, the Secretary must provide claimants notice of certain "decision[s] by the Secretary" and that notice must contain certain elements, including identification of favorable findings and how to obtain evidence used in making the decision. Before the AMA, this Court and the U.S. Court of Appeals for the Federal Circuit placed greater significance on whether VA conveyed the statutory notice elements to claimants than on the form in which those elements were conveyed. But none of those cases, or any case since the enactment of the AMA, directly answered whether section 5104 spoke to the form in which that notice was to be conveyed to claimants.

Army veteran William D. Cowan, through counsel, appeals a May 7, 2020, Board of Veterans' Appeals decision.[1] He argues that VA did not provide him proper notice under section

---

[1] The Board assigned the following ratings for the right knee: (1) a 10% rating based on flexion before February 20, 2018; (2) a 10% rating based on extension from February 28, 2012, to May 12, 2014; (3) a 30% rating for extension limitation from May 12, 2014, to May 2, 2017; (4) a 40% rating for extension limitation from May 2, 2017; (5) a 10%

5104; specifically, that a January 2019 notice letter of a November 2018 regional office (RO) decision and a May 2020 notice letter of the Board decision lacked the statutory notice elements. The parties disagree on whether the January 2019 notice letter itself had to contain all of the statutory notice elements and whether section 5104 applies to the Board after enactment of the AMA. We submitted this case to panel to decide whether, under the AMA, a notice letter sent under section 5104 must itself contain each of the statutory notice elements or whether the notice letter may be read together with its enclosures, such as a VA decision or standard VA form, to determine if notice was sufficiently conveyed to a claimant; and whether section 5104 now applies to the Board.

We find that section 5104 is silent about the form for conveying its notice requirements and that VA reasonably filled this gap with 38 C.F.R. § 3.103(f), which provides that the notice must be in writing and may include a notice letter, enclosures, or a combination of those documents. Thus, we hold that the notice letter itself does not have to contain each of the section 5104(b) elements. Applied to Mr. Cowan's case, the Court thus reads the January 2019 notice letter together with an enclosed November 2018 RO decision to determine whether VA provided him with sufficient notice. Even so, because the Board did not adequately address Mr. Cowan's argument that VA failed to provide proper notice under section 5104, the Court must remand for the Board to do so. And because the Court must remand for the Board to adequately discuss in the first instance whether the RO provided sufficient notice, we do not reach the question whether the section 5104 notice requirements apply to the Board under the AMA.

## I. BACKGROUND

Mr. Cowan served on active duty from July 2001 to December 2001. R. at 7932. VA granted service connection for right knee injury residuals with a 10% rating effective December 2001, R. at 7788, and later granted a 20% rating for that condition from June 2002, R. at 7718. In May 2008, the Board denied an increased rating claim, R. at 7311, and Mr. Cowan appealed to

---

rating for instability before and from February 20, 2018; and (6) a 50% rating for ankylosis from February 20, 2018. Record (R.) at 5. The Board also remanded a claim for service connection for right ear hearing loss. *Id*. The Court lacks authority to address this nonfinal matter. *See* 38 U.S.C. § 7252(a) (providing that the Court has "exclusive jurisdiction" to review final Board decisions); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (holding that a Board remand "does not represent a final decision over which this Court has jurisdiction").

this Court, *see* R. at 7114, which affirmed the part of the decision denying a rating above 20% for right knee disability residuals, R. at 7105-10. Mr. Cowan did not appeal.

Also in May 2008, Mr. Cowan informed VA that he had surgery on his right knee in April 2008 and would be unable to work until June 2008. R. at 7280. In June 2009, the RO granted a 100% rating effective April 2008 for surgical treatment requiring convalescence and "reassigned" a 10% rating from June 2008, and also granted service connection for right knee instability with a 10% rating effective June 2008. R. at 7176-77.

In February 2012, Mr. Cowan filed another increased rating claim. R. at 6033. In September 2012, the RO continued the 10% rating for degenerative joint disease (DJD) as a right knee injury residual and the 10% rating for right knee instability (both claimed as a right knee condition). R. at 5042. In February 2016, the RO issued a Statement of the Case (SOC) that continued the 10% rating for right knee plica syndrome[2] (previously shown as DJD) and proposed to reduce the 10% right knee instability rating to 0%. R. at 3714. In July 2016, the Board denied a rating above 10% for right knee instability and remanded the claim for a rating above 10% for right knee plica syndrome. R. at 3599, 3607-10. In April 2018, VA sought to provide a RAMP (Rapid Appeals Modernization Program) fact sheet, but it was returned as undeliverable. *See* R. at 900-04. Mr. Cowan, through Mr. Carpenter, opted into RAMP in September 2018 and selected the higher-level review option. R. at 883 (the form summarized the supplemental claim, higher-level review, and informal conference options); R. at 855 (October 2018 letter notifying Mr. Cowan that VA received the RAMP request and that it would review his claims and provide him a new decision).

In a November 2018 decision, under the "DECISION" heading, the RO stated that Mr. Cowan's right knee disability (plica syndrome with instability)—which was assigned a 10% rating for plica syndrome and a 10% rating for instability—was now rated as follows: (1) a 10% rating for plica syndrome based on flexion from June 1, 2008, to February 19, 2018; (2) a 0% rating for plica syndrome based on extension from April 12, 2017, to February 19, 2018; (3) a 10% rating for right knee instability from June 1, 2008, to February 19, 2018; and (4) a 50% rating for DJD, plica excision, meniscus repair with instability and ankylosis from February 20, 2018. R. at 831-

---

[2] A plica is a band of thick, fibrotic tissue that extends from the synovial capsule of a joint. As a result of overuse or injury, plica can become inflamed or irritated. *See* https://www.ncbi.nlm.nih.gov/books/NBK535362/ (last accessed April 26, 2022).

32.[3] The RO decision included an "EVIDENCE" section that listed about 30 pieces of evidence and a "REASONS FOR DECISION" section that explained the requirements for certain ratings and what VA had assigned. R. at 832-35. The RO also stated that "favorable findings identified in this decision" included the following: (1) that a February 2018 VA examination showed findings warranting a 50% rating for right knee DJD, plica excision, meniscus repair, with instability and anklylosis from February 20, 2018; and (2) an April 2017 VA examination showed findings warranting a 10% rating for right knee plica syndrome based on flexion and a 0% rating based on extension, both from April 12, 2017, through February 19, 2018. R. at 835. Finally, the RO stated that the "laws and regulations applicable to [the right knee] issue" included 38 C.F.R. §§ 3.159 (developing claims), 4.1 (rating essentials), 4.7 (higher of two ratings), 4.10 (functional impairment), 4.71a (musculoskeletal system) (Diagnostic Codes (DCs) 5256, 5257, 5260, 5261).

In a January 2019 letter, VA notified Mr. Cowan and Mr. Carpenter of the November 2018 decision. R. at 804-09. The letter stated that the decision was enclosed and that it "provides a detailed explanation of our decision, the evidence considered, and the reasons for our decision." R. at 804. Under the "What We Decided" heading, the letter reiterated the November 2018 decision's "DECISION" section and stated that the decision and letter together constituted VA's decision based on the veteran's higher-level review request. R. at 805. Under the "What You Should Do If You Disagree With Our Decision" section, the letter instructed the veteran that, for review of a higher-level review decision, he had one year from the date of the letter to file either a supplemental claim or appeal to the Board. R. at 806-07. The letter also instructed Mr. Cowan that if he would like to "obtain or access evidence used in making this decision, please contact us by telephone, email, or letter as noted below letting us know what you would like to obtain. Some evidence may be obtained online by visiting www.eBenefits.va.gov," and then provided a 1-800 number and VA website (https://iris.va.gov) and stated that addresses could be found on the

---

[3] Specifically, the RO decision, somewhat unclearly, stated:

> Evaluation plica syndrome, right knee with instability, which is evaluated as 10 percent for instability right knee and 10 percent for plica syndrome right knee, is rated as: plica syndrome right knee (flexion) evaluated as 10 percent disabling from June 1, 2008 through February 19, 2018; plica syndrome right knee with DJD (extension), evaluated as 0 percent disabling from April 12, 2017 through February 19, 2018; instability, right knee, evaluated as 10 percent disabling from June 1, 2008 through February 19, 2018; and a 50 percent evaluation is assigned for right knee degenerative joint disease, plica excision, meniscus repair, with instability and anklylosis effective February 20, 2018.

R. at 831-32.

4

attached "Where to Send Your Written Correspondence." R. at 807-08. VA enclosed several forms: VA Form 21-4138 (Statement in Support of Claim, RAMP Selection); RAMP Review Rights; VA Form 21-8764 (Award Information); VA Forms 28-1900, 28-8890 (Vocational Rehabilitation); VA Form 21-686c (Dependents); and Where To Send Your Written Correspondence.

In September 2019, Mr. Cowan, through Mr. Carpenter, submitted VA Form 10182 (Decision Review Request: Board Appeal (Notice of Disagreement)) and selected the direct review option for his knee disabilities. R. at 57 (options included direct review, evidence submission, or a hearing). As we will discuss, Mr. Cowan argued that the January 2019 letter did not comply with 38 U.S.C. § 5104(b) or 38 C.F.R. § 3.103(f) and prejudiced his ability to present his appeal to the Board, R. 59-65, and that he was not properly rated for multiple separate disabilities due to his in-service right knee injury, R. at 66-67.

## II. BOARD DECISION

In the May 2020 decision on appeal, under the "ORDER" heading, the Board stated that Mr. Cowan's right knee disability (plica syndrome with DJD)—which was assigned a 10% rating based on flexion from June 1, 2008, to February 19, 2018; a 0% rating based on extension for DJD from April 12, 2017, to February 19, 2018; a 10% rating for instability from June 1, 2008, to February 19, 2018; and a 50% rating for excision, meniscus repair, with instability and ankylosis from February 20, 2018—was now rated as follows: (1) a 10% rating based on flexion before February 20, 2018; (2) a 10% rating based on extension from February 28, 2012, to May 12, 2014; (3) a 30% rating for extension limitation from May 12, 2014, to May 2, 2017; (4) a 40% rating for extension limitation from May 2, 2017; (5) a 10% rating for instability before and from February 20, 2018; and (6) a 50% rating for ankylosis from February 20, 2018. R. at 5.[4] That same day, the

---

[4] The Board decision, somewhat confusingly, stated:

> Entitlement to increases in the (10 percent prior to February 20, 2018 for flexion, 10 percent prior to February 20, 2018 for instability, 0 percent from April 12, 2017 to February 20, 2018 for degenerative joint disease (extension); and 50 percent for excision, meniscus repair, with instability and ankylosis from February 20, 2018) staged ratings assigned for plica syndrome with degenerative joint disease (a right knee disability) is granted, to the following extent: separate 10 percent from February 28, 2012, 30 percent from May 12, 2014, and 40 percent from May 2, 2017 ratings for (extension limitation) and 10 percent ratings, each, for flexion limitation and instability, prior to February 20, 2018; and separate 10 percent (for instability) and 50 percent (for ankylosis) ratings from February 20, 2018.

R. at 5.

5

Board notified Mr. Cowan; the letter stated that the enclosed "decision tells you which issue(s) were decided in your appeal. It explains the evidence, laws, and regulations the [v]eterans [l]aw [j]udge considered when making their decision and identifies any findings that are favorable to you." R. at 4. The Board also enclosed VA Form 10183, which explains that if the veteran disagrees with the decision, he or she may file a supplemental claim (within one year) or appeal to this Court (within 120 days). R. at 25-26 (noting that higher-level review and a Board appeal were unavailable).

Relevant to the panel issues, the Board found that the January 2019 VA notice letter of the November 2018 RO decision explained how the veteran could appeal that higher-level review decision. R. at 22. It also found that the enclosed decision contained all the elements required by statute and regulation. *Id*. The Board noted that the decision discussed the relevant evidence; that one could discern from the decision and letter together what issues were adjudicated and the favorable findings that VA made; that where a claim was denied or not fully granted, VA explained the evidence leading to denial or the criteria necessary to obtain a higher rating; and that the letter informed Mr. Cowan of the different ways he could obtain or access evidence used in the decision. *Id*. Thus, the Board found no due process deficiencies in the notice and no prejudice, stating that

> [n]or has the [v]eteran's attorney, who has been a longtime advocate for veterans before the VA (the Board and CAVC, in particular), and thus is assumed to have an extensive knowledge of VA law and appellate procedures, provided any specific examples of how the [v]eteran in this case has been prejudiced by the January 2019 notice.

*Id*.[5]


### III. PARTIES' ARGUMENTS

Mr. Cowan argues that the January 2019 notice letter of the November 2018 RO decision did not comply with section 5104 and that the failure to provide him compliant notice deprived him of the ability to effectively decide what option to choose under the AMA and that he was thus prejudiced. Appellant's Brief (Br.) at 4-10. He also argues that the Board also needed to provide him notice of its May 2020 decision that complied with section 5104 and that it did not do so, particularly because it did not include favorable findings that would have been binding on all later

---

[5] The Board also remanded a right ear hearing loss service connection claim, but we don't have jurisdiction.

6

VA adjudicators. *Id*. at 11-16.

The Secretary argues that the veteran has abandoned any arguments on the merits of the Board decision (that is, the adequacy of his knee disability ratings) because he only raised arguments about notice. Secretary's Br. at 9. The Secretary also argues that the January 2019 notice letter, when read with the November 2018 RO decision, provided notice that complied with section 5104 and that Mr. Cowan had shown no prejudice. Secretary's Br. at 10-17. Finally, the Secretary argues that section 5104, as revised by the AMA, does not apply to Mr. Cowan's case or to Board decisions generally. Secretary's Br. at 17-24.

Mr. Cowan responds that he has abandoned no merits arguments because he was not been fully informed of the decisions regarding his claims. Reply Br. at 1-3. He reiterates that the January 2019 notice letter did not provide proper notice and states that he was prejudiced because, had he received notice that VA's decision made favorable findings of fact on all the elements of his claims, he would have been able to make an informed decision of whether to file a supplemental claim or appeal to the Board. Reply Br. at 4-8. Finally, he asserts that section 5104 still applies to the Board, noting that the Board included with its decision a VA form instructing the veteran on what to do if he disagreed with the decision, which is notice required by section 5104. Reply Br. at 9-15.

## IV. ANALYSIS
### A. Notice Under Section 5104

The parties essentially disagree on the form in which the notice requirements of section 5104(b) are conveyed to claimants. The Secretary asserts that the notice letter, decision, and any other enclosures can and should be read together to assess whether the section 5104(b) requirements are met. Secretary's Br. at 10-17. Mr. Cowan contends that the notice letter itself must include all of the section 5104(b) elements. Appellant's Br. at 4-10; Reply Br. at 4-8.

To address this question, we must interpret section 5104. Statutory interpretation is a question of law that we review de novo. *See Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018). "In determining the meaning of a statutory provision, 'we look first to its language, giving the words used their ordinary meaning.'" *Artis v. Dist. of Columbia,* 138 S. Ct. 594, 603 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)); *see Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012). And "the plain meaning of any statutory provision must be determined in light of the statutory scheme as a whole, the specific context in which the word or provision at

7

issue is used, and the broader context of the statute as a whole." *Hornick v. Shinseki*, 24 Vet.App. 50, 52 (2010); *see King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (articulating same basic principles); *Imazio Nursery, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1564 (Fed. Cir. 1995) (same).

Section 5104 now provides:

(a) In the case of a decision by the Secretary under section 511 of this title affecting the provision of benefits to a claimant, the Secretary shall, on a timely basis, provide to the claimant (and to the claimant's representative) notice of such decision. The notice shall include an explanation of the procedure for obtaining review of the decision.

(b) Each notice provided under subsection (a) shall also include all of the following:

(1) Identification of the issues adjudicated.

(2) A summary of the evidence considered by the Secretary.

(3) A summary of the applicable laws and regulations.

(4) Identification of findings favorable to the claimant.

(5) In the case of a denial, identification of elements not satisfied leading to the denial.

(6) An explanation of how to obtain or access evidence used in making the decision.

(7) If applicable, identification of the criteria that must be satisfied to grant service connection or the next higher level of compensation.

The Court first notes that the AMA did not amend section 5104(a), but only amended section 5104(b). That subsection had previously provided that "[i]n any case where the Secretary denies a benefit sought, the notice required by subsection (a) shall also include (1) a statement of the reasons for the decision, and (2) a summary of the evidence considered by the Secretary." In other words, Congress added six notice elements to subsection (b) ("[a] summary of the evidence considered by the Secretary" is the only element in both the pre- and post-AMA versions)[6] and those notice elements now apply to all decisions, not just denials.

---

[6] We note that the pre- and post-AMA versions of section 5104(a) both contain one notice element (how to obtain review of the decision). We also note that the pre-AMA version of section 5104(b) contained two notice elements (the reasons for the decision and the evidence considered), while the post-AMA version of section 5104(b) contains seven notice elements (it removed the reasons element, kept the evidence considered element, and added six elements). Thus, throughout the decision, we sometimes note the post-AMA statute's eight notice elements (one from section 5104(a) and seven from section 5104(b)).

With that in mind, we now look to whether the plain language of section 5104 is clear on the form of the notice—i.e., must all of the notice elements be in a single notice letter or can the elements be in a notice letter, enclosures (including the decision and standard VA forms), or a combination of those documents? There is no pre- or post-AMA case that directly answers this question. But there are pre-AMA cases that clarify the matter.

For example, in *Cummings v. West*, the Federal Circuit concluded that VA's Appeals Notice form, which provided a general outline of the steps to appeal a Board decision and which was sent along with each decision, satisfied the section 5104(a) requirement that the notice must explain the procedure for obtaining review of the decision. 136 F.3d 1468, 1470-71, 1474 (Fed. Cir. 1998), *overruled on other grounds by Bailey v. West*, 160 F.3d 1360 (Fed. Cir. 1998). The Board still sends similar forms with its notice letters and decisions. *Compare* R. at 25-26 (the Board enclosing with Mr. Cowan's decision a VA Form 10183-SB, which explains what a claimant can do if he or she disagrees with VA's decision, including submitting new and relevant evidence or appealing to the Court) *with Cummings*, 136 F.3d at 1470 (the Appeals Notice form explaining what to do if the decision was unfavorable to the claimant, including submitting new and material evidence or appealing to the Court); *but see* R. at 806-07 (the RO notice letter itself explaining to Mr. Cowan what to do if he disagreed with the decision).

In *Sutton v. Nicholson*, this Court held that "[t]he essence of section 5104 is the requirement that a claimant be given notice adequate to allow an appeal of the decision," that Mr. Sutton had not shown that his rights were affected by the form of the notice, and that "it was not error under section 5104 to communicate the required information to the appellant through a [Supplemental SOC (]SSOC[)] rather than providing a timely copy of the decision itself." 20 Vet.App. 419, 423 (2006). Although the issue in *Sutton* was that the claimant did not receive the RO decision, the Court implied that the notice elements at that time (how to appeal, the reasons for the decision, and the evidence considered) could be provided to the claimant in a document other than a notice letter (there, an SSOC) and that the form of the notice was unimportant as long as the relevant information was conveyed to the claimant. *Id*.

And, in *Mayfield v. Nicholson*, the Federal Circuit noted that, although the information in Ms. Mayfield's notice letter and SOCs did not satisfy the Veterans Claims Assistance Act (VCAA) notice requirements, "[t]his is not to say that VCAA notification must always be contained in a single communication from the VA. The statute and regulation are silent regarding the form to be

9

used for the . . . notification," and require only that "the claimant be given the . . . information prior to the VA's decision . . . and in a form that enables the claimant to understand the process, the information that is needed, and who will be responsible for obtaining that information." 444 F.3d 1328, 1333 (Fed. Cir. 2006). We recognize that the Federal Circuit was addressing 38 U.S.C. § 5103 under the VCAA, rather than section 5104 under the AMA, but we still find *Mayfield* instructive. Section 5103(a) at that time provided:

> Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.

*See Mayfield*, 444 F.3d at 1332.[7] As the Federal Circuit noted, the statute was silent on the notice's form and thus notice did not necessarily need to be in a single document, as long as the relevant information was conveyed to the claimant. This Court notes that, although sections 5103(a) and 5104(a) concern different parts of the adjudication process, they contain similar notice elements, such as identification of evidence, accessing evidence, and what criteria are needed for substantiating a claim.

After reviewing the plain language of the statute and these cases, we find that section 5104—which states that (a) "the Secretary shall, on a timely basis, provide the claimant . . . notice of such decision. The notice shall include an explanation of the procedure for obtaining review of the decision" and (b) "[e]ach notice provided under subsection (a) shall also include all of the following [7 elements]"—is likewise silent on the form for providing notice. The statute does not dictate a specific form, such as that all eight notice elements be in a single notice letter. *See Cummings*, 136 F.3d at 1474 (the Federal Circuit finding that an enclosed standard form explaining

---

[7] Section 5103(a)(1) currently states that:

> the Secretary shall provide to the claimant and the claimant's representative, if any, by the most effective means available, including electronic communication or notification in writing, notice of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.

how to appeal a decision satisfied section 5104(a)'s requirement of explaining how to obtain review).

And, although we note that a May 19, 2017, House Report states that the AMA includes "a statutory requirement that VA issue detailed decision notification letters," H.R. Rep. No. 115-135, at 99 (2017), neither "detailed decision notification letter," nor any other term connoting a single notice letter, appears in section 5104. *See Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 599 (2011) (quoting *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568 (2005)) (finding that, "as we have said before, Congress's 'authoritative statement is the statutory text, not the legislative history'"); *see also Ctr. for Auto Safety v. Peck*, 751 F.2d 1336, 1351 (D.C. Cir. 1985) (holding that "Congress does not act, and cannot legally bind, through its intent and expectation as such, whether individually or collectively expressed, but only through the laws that it enacts").

To the extent that the Court may consider Congressional intent that it discerns from the legislative history in assessing the meaning of a statute, we note that Congress, at least in this House Report, appears more concerned with the substance of the notice than its form, listing each substantive notice element and stating that the intent of the statute was to help better inform the veteran's decision about whether to appeal a decision. H.R. Rep. No. 115-135, at 99. To be clear, we do not read the legislative history as requiring a distinction between the notice letter and the decision. And, to the extent that it could be read that way, Congress's authoritative statement was the statutory text and not the legislative history, *see Chamber of Com. of U.S*, 563 U.S. at 599, and that statute did not mention a "detailed decision notification letter" nor any other term connoting a single notice letter.

Returning to the language of the statute, we find that, like *Mayfield*, 444 F.3d at 1333, and *Sutton*, 20 Vet.App. at 423, both of which placed greater significance on whether the notice elements were conveyed to the claimant than on the form in which they were conveyed, section 5104 itself is silent as to the form for providing notice but clear on the substance of that notice. And this is so given that the statute specifically lists the eight notice elements that must be conveyed to the claimant but not how they are conveyed. Thus, contrary to Mr. Cowan's argument, the statute does not require that all of the section 5104 notice elements be in a single notice letter.

We recognize that under the AMA Congress made extensive changes to the VA adjudicative process and added six notice elements to section 5104(b). But the statute simply does

11

not require that the section 5104 notice elements be in a separate notice letter; it only requires that those elements be clearly conveyed to claimants.

## B. Gap Filling and 38 C.F.R. § 3.103(f)

And, because section 5104 is silent as to the form for providing notice, there is a gap left by the statute. *See Hyundai Steel Co. v. United States*, 19 F.4th 1346, 1354 (Fed. Cir. 2021) (holding that, "for a statute to be considered silent under *Chevron* step one, there must be a 'gap left, implicitly or explicitly, by Congress' that [the Agency] is entitled to fill") (quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). And VA appears to have filled that gap through its amendments to 38 C.F.R. § 3.103(f). Thus, we must assess that regulation using the two-step *Chevron* framework. Under step one, the Court determines "whether Congress has directly spoken to the precise question at issue," 467 U.S. at 842, and, as we found, Congress did not do so here because the statute was silent on the form of the required notice. Thus, we go on to step two where we assess "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. In applying *Chevron*, "the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, whether the agency stayed within the bounds of its statutory authority." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). And, "as a general rule, agencies have authority to fill gaps where the statutes are silent." *Nat'l Cable & Telecom. Ass'n, Inc. v. Gulf Power Co.*, 534 U.S. 327, 339, (2002) (citing *Chevron*, 467 U.S. at 843–44); *see also Canadian Solar, Inc. v. United States*, 918 F.3d 909, 917 (Fed. Cir. 2019).

Effective February 19, 2019, § 3.103(f) now provides:

(f) Notification of decisions. The claimant or beneficiary and his or her representative will be notified in writing of decisions affecting the payment of benefits or granting of relief. Written notification must include in the notice letter or enclosures or a combination thereof, all of the following elements:

(1) Identification of the issues adjudicated;

(2) A summary of the evidence considered;

(3) A summary of the laws and regulations applicable to the claim;

(4) A listing of any findings made by the adjudicator that are favorable to the claimant under § 3.104(c);

(5) For denied claims, identification of the element(s) required to grant the claim(s) that were not met;

12

(6) If applicable, identification of the criteria required to grant service connection or the next higher-level of compensation;

(7) An explanation of how to obtain or access evidence used in making the decision; and

(8) A summary of the applicable review options under § 3.2500 available for the claimant to seek further review of the decision.

38 C.F.R. § 3.103(f) (2021) (listing section 5104 as statutory authority for the regulation); *see* 84 Fed. Reg. 138-01 (January 18, 2019) (in discussing comments about § 3.103, the Secretary noted that, in the AMA under section 5104(b)(1)-(7), Congress directly addressed the information requirements for decision notices: "all decision notices, regardless of whether or not they deny a benefit sought, must now include seven specified data elements").[8]

Here, § 3.103(f) states that a claimant must be notified of each of the seven notice elements required under section 5104(b) and, like the section 5104(a) requirement, of the options available for seeking review of the decision. But the regulation goes a step further by providing the form in which those statutory elements are conveyed to the claimant, stating that the claimant "will be notified in writing of decisions" and that the "[w]ritten notification must include in the notice letter or enclosures or a combination thereof, [those eight] elements." In other words, VA clarified that the notice must be in writing and specified that it could take the form of a notice letter, enclosures, or a combination of those written documents. Thus, through § 3.103(f), VA promulgated that the section 5104 notice elements need not all be in a single notice letter. Rather, those notice elements may also be in enclosures to that letter. And those enclosures would presumably include the decision itself and standard VA forms explaining how to obtain review of a decision, given that VA generally encloses those documents with its notice letters. *See Cummings*, 136 F.3d at 1474 (the Federal Circuit finding that an enclosed standard form explaining how to appeal a decision satisfied the section 5104(a) requirement); *see also* R. at 809 (January 2019 VA letter to Mr. Cowan listing the enclosed documents, including the RO decision).

---

[8] Before February 19, 2019, § 3.103(f) provided:

> Notification of decisions. The claimant or beneficiary and his or her representative will be notified in writing of decisions affecting the payment of benefits or granting relief. All notifications will advise the claimant of the reason for the decision; the date the decision will be effective; the right to a hearing subject to paragraph (c) of this section; the right to initiate an appeal by filing a Notice of Disagreement which will entitle the individual to a Statement of the Case for assistance in perfecting an appeal; and the periods in which an appeal must be initiated and perfected (See part 20 of this chapter, on appeals). Further, any notice that VA has denied a benefit sought will include a summary of the evidence considered.

The Court finds that § 3.103(f) adheres to section 5104 because it too requires the same eight notice elements that the statute requires. The Court holds that the regulation constitutes a reasonable gap-filling of the statute about the form of that notice. VA is tasked with notifying claimants of the decisions it makes about their benefits. And it follows that VA is thus in the best position to determine the method for effectively and efficiently conveying that notice to claimants, such as that it be in a notice letter, enclosures (including the decision or standardized forms), or a combination of those written documents. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) (noting that courts generally will defer to an agency's construction of the statute it is charged with implementing and to the procedures adopted to implement the statute); *id.* at 543-44 (1978) (holding that "[a]bsent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods . . . capable of permitting them to discharge their multitudinous duties" and reiterating that courts should not "devise[] procedures to be followed by the agency on the basis of its own conception of how the public . . . interest involved could best be served") (citing *FCC v. Schreiber*, 381 U.S. 279, 290 (1965), and *FCC v. Pottsville Broad. Co.*, 309 U.S. 134, 143 (1940)) (internal quotations omitted); *see also Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985) (holding that "[t]he agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities"); *Buffington v. McDonough*, 7 F.4th 1361, 1367 (Fed. Cir. 2021) (reiterating that "'VA is in a better position than this court to evaluate inefficiencies in its system'") (quoting *Veterans Just. Grp., LLC v. Sec'y of Veterans Affs.*, 818 F.3d 1336, 1351 (Fed. Cir. 2016)). Even if this Court thought that including all of the section 5104 notice elements in a single notice letter would be the best way to notify a claimant of a VA decision, it is not the Court's place to prescribe such a practice, particularly where VA's regulation requires that all of the section 5104 notice elements be conveyed to the claimant and where VA is better equipped in assessing the form in which that notice is conveyed.[9]

---

[9] During oral argument, Judge Allen proposed one way in which VA could comply with section 5104: that VA signify in its notice letters the pages of the enclosed decision and forms where the statutory notice elements were located; for example, VA could state that it made favorable findings and they were located on pages 6 and 13 of the enclosed decision. *Cowan v. McDonough*, No. 20-6227, Oral Argument at 58:30-1:00:10 (available at https://www.youtube.com/watch?v=wPcgl31LIrI). He noted that this would allow VA to flag information that Congress stated was important as well as avoid duplicating the entire decision in the notice letter and risking scrivener's errors while transferring the information from the decision to the notice letter. We understand that Judge Allen was not stating that this is what VA must do or even what it should do. But we do note that, although the Court may believe

In sum, the Court finds that section 5104 is silent on the form for providing notice to claimants and that § 3.103(f) reasonably fills that gap left by the statute. Thus, VA may convey the section 5104 notice elements to claimants with a notice letter, enclosures (including the decision or standardized forms), or a combination of those written documents. And the Court will read those documents together when assessing whether VA provided proper notice to a claimant under section 5104.

In his thoughtful and well-written concurrence, Judge Allen states that the issue here is not about the form of notice, which he agrees is a matter over which VA has great discretion, but that the notice aspects Congress mandated are distinct from the decision itself. *Post* at 23-24. He asserts that VA cannot accomplish Congress's goal of using the *notice* to assist a claimant in understanding the *decision* by only changing the *decision* itself. *Post* at 25. He acknowledges that it is within VA's discretion to allow the notice letter to refer to enclosures to accomplish Congress's goal. *Post* at 26. He states that VA had many options available to ensure that Mr. Cowan received section 5104-compliant notice, whether that be noting in the notice letter that the decision would discuss the eight elements that section 5104 mandates, including a discussion of those elements in the notice letter, or including some sort of enclosure that dealt with the issue. *Post* at 26-27. He concludes that, although VA has broad discretion in how it provides notice, it did the one thing it could not—that is, making few, if any significant, changes to its notice letters following the AMA. *Post* at 26.

We note that there is much common ground between us. As we discuss later, we agree that the pre- and post-AMA letters sent to Mr. Cowan are virtually identical. And the Board here did not adequately explain how the post-AMA January 2019 letter, which looked very similar to the pre-AMA September 2012 letter, satisfied the new section 5104 requirements, particularly about the obtaining evidence element, despite Mr. Cowan having challenged VA's notice before the Board. We also agree that VA may use enclosures to provide section 5104 notice and it is within VA's discretion for its notice letters to refer to enclosures and it is not improper that VA used an enclosure to inform Mr. Cowan about his appeal options, as required by section 5104(a). We also agree that one option for VA to fulfill the statutory notice requirement is to note in its notice letter

that this a better way to notify claimants of the section 5104 elements, again, it is for VA to prescribe such practices. This is not to say, however, that VA cannot adopt this idea if it finds that it would be a more efficient or effective way to provide notice to claimants.

15

that the decision itself will discuss the section 5104 elements. And we agree that VA has broad discretion in the form of its notice. Thus, to some extent, it seems that we agree that the section 5104 elements may be in the decision itself—which, as discussed, is an enclosure of the notice letter—so long as those notice elements are highlighted or flagged.

Where we diverge from Judge Allen's concurrence, though, is his conclusion that the notice elements must be distinct from the decision itself. We hold that the notice elements may be in the decision itself or other enclosures so long as they are easily identifiable and help claimants understand the decision.[10]

But as we discuss next, because the Board did not adequately address Mr. Cowan's notice argument, the Court cannot determine whether the notice letter, rating decision, and other enclosures here adequately conveyed the section 5104 notice elements to the appellant. And it is for the Board in the first instance to consider this.

### C. Reasons or Bases and the Section 5104 Notice Elements

Now that we have determined that the Court will read VA notice letters together with any enclosures, including an enclosed VA decision, the next question is whether the January 2019 notice letter and the enclosed November 2018 RO decision provided sufficient notice to Mr. Cowan under section 5104. But we are unable to reach that question because the Board here did not properly address Mr. Cowan's argument before it that the January 2019 notice letter did not comply with section 5104 or § 3.103(f). *See* R. at 21.

The Board's statement of reasons or bases must address all issues raised by the claimant or the record, *Robinson v. Peake*, 21 Vet.App. 545, 552 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1335 (Fed. Cir. 2009), and discuss all provisions of law and regulation where they are made "potentially applicable through the assertions and issues raised in the record," *Schafrath v. Derwinski*, 1 Vet.App. 589, 592 (1991).

Although the Board acknowledged Mr. Cowan's notice argument, it did not sufficiently discuss this matter. Instead, the Board summarily stated that the notice letter explained how Mr. Cowan could appeal the decision; that the "relevant evidence was discussed in the [November 2018] decision"; that one could discern from the decision and letter together "the issues that were

---

[10] We note that Judge Toth's concurrence persuasively supports this determination. *See post* at 29 (stating that what ultimately matters is whether the information Congress required VA to communicate in section 5104 is conveyed with sufficient clarity that a claimant understands how VA adjudicated the case and so can challenge any error, which requires that the notice VA provides be easy enough to locate and understand).

adjudicated and the findings that VA found to be in the [v]eteran's favor"; that "[w]here a claim was denied or not granted to the fullest extent, the VA explained the evidence resulting in the denial or the criteria necessary to obtain a higher rating"; and that the letter informed Mr. Cowan "of the different ways . . . he could either obtain or access evidence used in the [November 2018] decision". R. at 22. These general and conclusory statements, with no specific discussion of the content of the November 2018 decision or the January 2019 letter, do not enable Mr. Cowan to understand the basis for the Board's determination about his expressly raised notice argument, *see Robinson*, 21 Vet.App. at 552; *Schafrath*, 1 Vet.App. at 592, nor do they facilitate judicial review of the matter, *see* 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990) (holding that the Board must support its determination with an adequate statement of reasons or bases that enables the claimant to understand the precise basis for that determination and facilitates review in this Court).[11]

And without such a discussion, it is unclear how the January 2019 letter and enclosed November 2018 decision satisfied the following section 5104(b) requirements: (4) identification of findings favorable to the claimant and (6) an explanation of how to obtain or access evidence used in making the decision.

### i. Favorable findings

As to (4) favorable findings, it is true that the November 2018 decision noted three "Favorable findings identified in this decision": a February 20, 2018, VA examination showed findings warranting a 50% rating for right knee DJD, plica excision, meniscus repair, with instability and anklylosis from February 20, 2018; and an April 12, 2017, VA examination showed findings warranting a 10% rating for right knee plica syndrome based on flexion from April 12, 2017, to February 19, 2018, and showed findings warranting a separate 0% rating for right knee plica syndrome with DJD based on extension from April 12, 2017, through February 19, 2018. R. at 835.

But at least two apparent favorable findings were not listed in the November 2018 decision's "Favorable findings" section.

---

[11] The Court's finding today concerning the Board's inadequate reasons or bases about notice under section 5104 hinges on Mr. Cowan challenging this issue on appeal to the Board. In other words, our holding here addresses only situations like Mr. Cowan's where the claimant raises notice issues to VA. We need not analyze other situations today that are not before us.

First, under its "DECISION" section, the RO stated that Mr. Cowan was assigned a 10% rating for right knee plica syndrome based on flexion from June 1, 2008, to February 19, 2018, and under the "Favorable findings" section, the RO stated that a VA examination showed findings warranting a 10% rating for flexion from April 12, 2017, to February 19, 2018. But the RO did not account for flexion for the period from June 1, 2008, to April 11, 2017, under the "Favorable findings" section. The Court notes that the flexion rating would have unlikely changed from June 1, 2008, to February 27, 2012, because Mr. Cowan had received a 10% rating for right knee injury residuals from June 1, 2008, R. at 7176-77, and he did not file his increased rating claim until February 28, 2012, R. at 6033. But in its "Favorable findings" section, the RO still did not account for the period from February 28, 2012, to April 11, 2017, such as noting the evidence that it found showed a 10% flexion rating for that period.[12] And the absence of this apparent favorable finding is significant because the May 2020 Board decision seems to have granted increased ratings for a similar period (from February 28, 2012, to May 2, 2017) for right knee extension. R. at 5.

Second, under its "DECISION" section, the RO assigned a 10% rating for right knee instability from June 1, 2008, to February 19, 2018, and under its "Favorable findings" section, the RO stated that a VA examination showed findings warranting a 50% rating for right knee DJD, plica excision, meniscus repair, with instability and anklylosis from February 20, 2018. But again, the RO did not account for instability before February 20, 2018, under the "Favorable findings" section. The Court notes that the instability rating would have unlikely changed from June 1, 2008, to February 27, 2012, because Mr. Cowan had received a 10% rating for right knee instability since June 1, 2008, R. at 7176-77, and did not file his increased rating claim until February 28, 2012, R. at 6033. But in its "Favorable findings" section, the RO still did not account for the period from February 28, 2012, to February 19, 2018, such as noting the evidence that it found showed a 10% instability rating for that period.

Again, the Court notes that the Board found that one could discern from the decision and letter together "the findings that VA found to be in the [v]eteran's favor." R. at 22. But the Court could not discern VA's apparent favorable findings without a careful comparison of the "DECISION" and favorable findings sections and the cited evidence. Requiring veterans, who are

---

[12] To be clear, the Court is not stating that the RO must specifically list evidence when conveying its favorable findings under section 5104(b)(4). Rather, the Court used that as an example here because the November 2018 RO decision noted its favorable findings in terms of which pieces of evidence supported a particular rating.

often times not represented, to do such legal gymnastics is contrary to the AMA's purpose of better informing them about their decisions. *See* H.R. Rep. No. 115-135, at 99 (stating that the intent of the statute was to help better inform the veteran). Further, without an adequate explanation from the Board here about Mr. Cowan's notice argument, it is unclear why the two apparent favorable findings discussed above were not specifically identified by the RO in its November 2018 decision. *See Gilbert*, 1 Vet.App. at 56-57. And if these two apparent favorable findings were not listed by the RO, the Court is left wondering if the RO then failed to identify other favorable findings.

### ii. Obtaining evidence

As to (6), which concerns VA's explanation of how to obtain or access the evidence used in making its decision, the Court will first compare pre- and post-AMA notice letters VA sent to Mr. Cowan. A September 2012 VA notice letter instructs Mr. Cowan that, if he has questions or needs assistance, he should call 1-800-827-1000, send electronic inquiries to https://iris.va.gov, or send letters to the address at the top of that letter (the Louisville RO address). R. at 5037. The January 2019 notice letter states: "If you would like to obtain or access evidence used in making this decision, please contact us by telephone, email, or letter as noted below letting us know what you would like to obtain. Some evidence may be obtained online by visiting www.eBenefits.va.gov." R. at 807. The letter then states that, if Mr. Cowan has questions or needs assistance, he should call 1-800-827-1000, send electronic inquiries to https://iris.va.gov, or send letters to the appropriate address listed on the enclosed Where To Send Your Written Correspondence form (all compensation claims are now sent to one centralized intake center). R. at 808.

The Court again notes that the Board summarily stated that the January 2019 letter informed Mr. Cowan "of the different ways . . . he could either obtain or access evidence used in the [November 2018] decision". R. at 22. But without an adequate explanation from the Board about Mr. Cowan's notice argument, it is unclear to the Court how the post-AMA January 2019 letter, which looked very similar to the pre-AMA September 2012 letter—in that both provided the same general telephone number and VA website for electronic inquiries and included a generic statement that "[s]ome evidence may be obtained online by visiting www.eBenefits.va.gov"–

19

satisfied the new section 5104 requirement that VA explain to Mr. Cowan how to obtain or access the evidence used in deciding his case. *See Gilbert*, 1 Vet.App. at 56-57.[13]

### D. Remedy and Other Arguments

When the Board's reasons or bases are inadequate, the proper remedy is for the Court to remand the matter. *Tucker v. West*, 11 Vet.App. 369, 374 (1998)). Thus, because the Board in its May 2020 decision failed to adequately address Mr. Cowan's argument that VA did not afford him sufficient notice under section 5104, we will remand for the Board to properly address this matter.[14] We note that, consistent with this decision, the Board may review the January 2019 notice letter and the November 2018 RO decision and other enclosures in assessing whether sufficient notice was conveyed to Mr. Cowan.

And because judicial review is frustrated by the Board's inadequate reasons or bases concerning Mr. Cowan's argument about notice, we do not reach the parties' arguments on whether there was a notice error and if that error was prejudicial. *See Washington v. Nicholson*, 19 Vet.App. 362, 369 (2005) (holding that the Board must in the first instance assess the probative value of evidence); *see also Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004) (finding that "[w]here the effect of an error on the outcome of a proceeding is unquantifiable, however, we will not speculate as to what the outcome might have been had the error not occurred"); *Savage v.*

---

[13] The Court also notes that (3) summary of applicable laws and regulations could have been clearer. Although the November 2018 decision included a "Law and regulations applicable to this issue" section, R. at 835, it did not, for example, include 38 C.F.R. §§ 4.40, 4.45, and 4.59 in that summary, even though the RO stated earlier in the decision that it assigned the 10% rating for right knee flexion based on painful motion under § 4.59 and that § 4.40 and § 4.45 were considered and applied under § 4.59, R. at 833. The Board stated that Mr. Cowan's interpretation of "summary" seemed to be an explanation of what is in each applicable law, rather than a listing of the laws applied, and then found that, "in any case, the relevant evidence is discussed in the [November 2018] decision." R. at 22 (the Board did not specifically state that the relevant regulations were discussed in the decision). Although one may discern from the November 2018 decision that §§ 4.40, 4.45, and 4.59 were regulations applicable to Mr. Cowan's case, it is unclear, especially without an adequate explanation from the Board concerning his notice argument, *see Gilbert*, 1 Vet.App. at 56-57, why the RO did not include these regulations in its summary list, particularly when it assigned a rating based on those regulations.

[14] We note that Mr. Cowan's case presented other questions on remanding for notice issues under the AMA. Thus, on March 2, 2022, the Court ordered the parties to respond to those questions, including (1) if the Court found notice error, how should the Court frame its remand instructions and could the Board fix the notice error itself; (2) does the Board have authority to remand to the RO to remedy notice errors and if not, what action should the Board take; and (3) if the remedy was for the Board to instruct the RO to provide sufficient notice, does the Court vacate the part of the May 20202 Board decision concerning the knee disability and if the Court vacates that part of the decision, what does VA do with the compensable knee extension ratings and instability ratings from February 20, 2018, that the Board assigned? After granting an extension, the parties both responded to the Court's order on March 30, 2022. The Court thanks the parties for its responses, but, because we have ultimately determined that the Board's reasons or bases are inadequate, we do not reach those additional remand issues.

*Shinseki*, 24 Vet.App. 259, 272-73 (2011) (declining the Secretary's invitation for the Court to presume the outcome would have been the same even if the Board had considered evidence that it overlooked).[15] And because we do not reach the parties' arguments about whether there was prejudicial notice error, we will also not discuss the question noted in our March 2, 2022, order— whether Mr. Cowan would be prejudiced by any notice error if he may still file a supplemental claim and preserve his effective date. Finally, because the Court must remand for the Board to first adequately discuss whether the RO provided proper notice, we do not reach the other panel question of whether the section 5104 notice requirements apply to the Board under the AMA.

### V. CONCLUSION

On consideration of the above, the part of the May 7, 2020, Board decision concerning Mr. Cowan's right knee disability is SET ASIDE and the matter is REMANDED for readjudication consistent with this decision. The rest of the appeal is DISMISSED.

ALLEN, *Judge*, *concurring in the judgment*: I agree with my colleagues that this matter should be remanded. Indeed, there is much common ground between the well-written majority opinion and my views. However, ultimately, the gap between my conclusion about the meaning of 38 U.S.C. § 5104, as amended in the AMA, and that of the majority is ultimately too wide to bridge. So, I am able reluctantly (and respectfully) only to concur in the judgment of the Court.

I'll summarize my views and then provide more detail about my position. First, in section 5104, Congress clearly required VA to afford claimants a *decision* on a claim as well as a separate *notice* of that decision. I agree whole-heartedly with the majority that VA has discretion—indeed, broad discretion—to implement what Congress intended in the amended section 5104 about providing notice of a decision to claimants. Where I differ from the majority is that I do not believe the Agency's discretion extends to what it did here. In that regard, Congress left no doubt that it meant to enhance the *notice* of a decision VA provides to claimants through section 5104. This focus on the notice of the decision was not merely about form in which Congress was indifferent

---

[15] And because judicial review of the notice issue is frustrated by the Board's inadequate reasons or bases, we also do not reach the Secretary's assertion that Mr. Cowan abandoned any arguments about the merits of the Board decision (that is, the adequacy of his knee disability ratings) because he only raised arguments about notice.

about how certain information was conveyed to claimants. Congress instead crafted a statute to ensure that the *notice* identified certain information that was a part of the *decision* so claimants would be in a better position to understand what VA had done and how they could challenge those determinations.

There are many ways VA could comply with Congress's direction in section 5104. But what it cannot do is make no changes to its notice letters to claimants in the wake of the amendment to section 5104. But that is precisely what the Agency did here; its pre- and post-AMA notice letters are essentially identical. The majority says that the identical letters are acceptable because VA's decisions include the information Congress specified should be included in the notice. But that is decidedly *not* what Congress said. No matter how much discretion VA has in affording claimants notice of its decisions, the Agency cannot decide for itself to change what Congress mandated. Yet, that is what the majority allows to happen. Essentially, the majority's view is that as long as the *decision* contains the information Congress mandated be in a *notice* document, a claimant has been provided compliant notice. That certainly is a defensible position about how the system should work as a policy matter. But that is not what Congress mandated. [16] I am convinced that Congress wanted the notice to serve a flagging function, highlighting certain important information that would be contained in the decision for claimants. Precisely how VA flags the information in the notice is where its discretion comes into play. But no matter how much discretion VA has, it cannot rewrite the statute Congress enacted. Because these views are mine alone and will carry little legal weight going forward, I will expound on them only briefly below. I will also explain why I believe that remand to the Board is appropriate for the Board to address the specific contours of a remedy even under my view about the nature of the error in this case.

I begin as the majority does with the language of amended section 5104. [17] The statute plainly requires that VA provide a claimant with both a decision on a claim and a separate notice of that decision. The majority does not disagree with that basic proposition. However, the majority holds that section 5104 does not prescribe any particular form for the notice VA is required to provide to a claimant. [18] That is true enough. Indeed, that omission is why I believe (largely in

---

[16] *See Lang v. Wilkie*, 971 F.3d 1348, 1355 (Fed. Cir. 2020) (rejecting this Court's holding based on policy considerations where the law is clear).

[17] *Ante* at 7.

[18] *Ante* at 10.

accord with the majority yet again) that VA has broad discretion about how to comply with section 5104. Yet, we cannot escape the reality that the plain language of the statute draws a distinction between notice and a decision. And in that regard, Congress specifically directed VA to provide certain information to claimants in the *notice*. And while I believe Congress left it to VA to decide the precise manner in which it would comply with section 5104's command, it did not give the Agency the option not to comply. Section 5104(a) specifically requires that VA "*shall . . . provide to the claimant notice of such decision.*"[19] This is mandatory language.[20] In fact, Congress was emphatic about its command to the Agency because it repeated in section 5104(b) that "[e]ach notice provided under subsection (a) *shall* also include" eight specifically enumerated elements;[21] Congress did not mention the "decision" at all.[22]

The majority notes that the language of section 5104(a) did not change with the AMA[23] and that pre-AMA caselaw clarifies that the provision does not require a specific form for providing notice.[24] Again, I agree with the majority to the extent that it holds that Congress did not require a specific form for the notice section 5104 mandates that VA provide. And I also agree that pre-AMA caselaw concerning notice generally may be useful in terms of assessing how VA can comply with notice requirements Congress mandates. But I respectfully submit that the majority ignores the extensive changes to the VA administrative adjudicative process Congress made through the AMA.[25] Specifically, with the AMA, Congress sought to "help streamline the VA's appeals process, while giving veterans more options and protecting their due process rights."[26] And it did so, in part, through amended section 5104, a statutory provision that ensures not only that the Agency convey certain *information* to claimants, but also that it do so in a way that *highlights* that information. So, the issue here is not about the form of notice – a matter over which

---

[19] 38 U.S.C. § 5104(a) (emphasis added).

[20] *See, e.g., Kingdomware Techs., Inc., v. United States*, 579 U.S. 162, 171-72 (2016); *Quinn v. Wilkie*, 31 Vet.App. 284, 291 (2019).

[21] 38 U.S.C. § 5104(b) (emphasis added).

[22] *Id.*

[23] *Ante* at 8.

[24] *Ante* at 9-10.

[25] *See Mattox v. McDonough*, 34 Vet.App. 61, 68 (2021).

[26] 163 Cong. Rec. H4457-01, H4464 (2017).

the Agency retains great discretion – but rather that the notice aspects Congress mandated are distinct from the decision itself.

This brings me to the legislative history concerning notice. In a May 2017 House Report on the AMA, the Veterans' Affairs Committee noted one element of the AMA was to "require that *VA decision letters* include certain information."[27] That report also noted:

> To help veterans better understand VA's decision on their claims, the bill includes a statutory requirement that VA issue detailed decision notification letters. Under the bill, a decision letter would include a summary of the evidence, a summary of applicable laws and regulations, an explanation of how the veteran may obtain a copy of the evidence used in making the decision, and VA's favorable findings, if any. If the veteran's claim is denied, the letter would also explain why the claim was denied, and describe the evidence VA would need to grant service connection or the next higher-level of compensation. The intent of this provision is to help better inform the veteran's decision regarding whether to appeal VA's rating decision.[28]

This report indicates that for Congress the notification letter was the critical focus in amending section 5104; no mention is made of changes to the rating decision itself. And that's because Congress was concerned with providing claimants information to better understand the *decision*. To be sure, VA has discretion about the way in which it provides the notice Congress mandated. But it strains credulity to believe the Agency could enhance *notice* about what is in the *decision* by leaving the *notice* unchanged. This point bears repeating. The majority adopts an interpretation of the statute that allows VA to provide enhanced notice of the content of a decision by simply changing the decision itself. It is difficult to square that conclusion with either the plain language of section 5104 or common sense.

The majority dismisses this legislative history principally because the language of section 5104(a) did not change when Congress enacted the AMA.[29] Again, true enough. However, the legislative history is critical to understanding what Congress meant to accomplish by requiring certain information to be in the *notice*, specifically to assist veterans in determining whether and how to appeal a rating decision and what that (often dense) decision means. Considering the purposes behind a statutory scheme is a useful check on a court's interpretation of a specific

---

[27] H.R. Rep. 115-135, 115th Cong. 1st Sess., 106 (2017) (emphasis added).

[28] *Id.* at 99.

[29] *Ante* at 10-11.

statutory provision.[30] Furthermore, the Federal Circuit has held that "even when the plain language of the statutory language in question would resolve the issue before the court, the legislative history should usually be examined at least 'to determine whether there is a *clearly expressed* legislative intention contrary to the statutory language.'"[31]

The legislative history of section 5104 as amended by the AMA underscores that Congress intended for VA to provide claimants both a notice letter and a decision. And Congress made clear that the notice was not a mere formality. It serves an important function in terms of highlighting certain information Congress determined was significant—for example, the eight elements identified in section 5104(b). The legislative history illustrates that Congress intended a shift in how notice was accomplished. To be clear, Congress did not require a specific form of that notice. Again, I agree with the majority on that point. VA has discretion about precisely how it provides the information Congress mandated be the subject of the notice. But the Agency cannot accomplish Congress's goal of using the *notice* to assist a claimant in understanding the *decision* by only changing the *decision* itself. Yet that is what VA did and what the majority says is fine. Therefore, I would hold that notice in this case was deficient because it did not satisfy what Congress mandated in amended section 5104.

Moving on to VA's implementing regulation concerning section 5104, 38 C.F.R. § 3.103, my position is closer to that of my colleagues in the majority than one might imagine. Although Congress intended for separation between the notice letter and decision and that the notice letter would refer to the elements described in the statute, as I noted above the Secretary has broad discretion in how that notice is implemented. I agree with the majority that § 3.103 serves a gap-filling role by providing that VA can comply with section 5104 through the "notice letter or enclosures or a combination thereof."[32] I find that choice entirely rational—or "permissible" in the context of administrative law.[33] As the majority indicates,[34] during oral argument, I engaged in a discussion of ways in which VA could comply with section 5104, including by flagging in the

[30] *See Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018).

[31] *Glaxo Operations UK Ltd. v. Quigg*, 894 F.3d 392, 395 (Fed. Cir. 1990) (emphasis added by *Glaxo* court) (quoting *Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 629 (Fed. Cir. 1989)).

[32] 38 C.F.R. § 3.103(f).

[33] *See Chevron USA, Inc. v. NRDC*, 467 U.S. 837, 843 (1984); *Buffington v. Wilkie*, 31 Vet. App. 293, 301-02 (2019), *aff'd sub nom. Buffington v. McDonough*, 7 F.4th 1361 (Fed. Cir. 2021).

[34] *Ante* at footnote 9.

notice letter where in the rating decision the elements outlined in section 5104(b) were located. This was but one example of many in which VA could comply with both the statute and regulation. It could also have prepared an enclosure with the notice letter that would flag the matters Congress identified. So, I ultimately agree with the majority that it is up to VA in large measure to decide the way to provide notice to claimants and that the regulation is, on its face, a permissible way in which to do so.[35] That is, it is within VA's discretion to allow the notice letter to refer to enclosures to accomplish Congress's goal.

Where my colleagues and I part ways is with respect to VA's actual implementation of the statute and regulation in this case. Specifically, VA appeared to make no changes to the notice letters it sent to appellant post-AMA from those it sent him pre-AMA. The January 2019 letter appears to contain the same information that VA provided to appellant in notification letters under the legacy appeals system.[36] Given the significant change to subsection 5104(b) and the AMA's complete overall of the appeals process, it seems hard to believe that Congress intended for VA to continue to send the same notice letters under the AMA that it did under the legacy system and rely entirely on an enclosed decision—a decision that Congress wanted claimants to better understand through enhanced notice. As I have said, it is difficult to fathom how these unchanged letters could satisfy Congress's intent to "help better inform the veteran's decision regarding whether to appeal VA's rating decision" given the complex options under the AMA that are entirely different from the legacy appeals process.[37] Stated differently, how could a claimant under the AMA be fully informed of his or her appeal options with a letter that was drafted to address the appeal options under the legacy appeal system and that made no reference—directly or by implication—to the matters Congress specified in section 5104(b)?

Essentially, although VA's discretion is broad in terms of the form it adopts to implement Congress's command about notice and the Secretary had many options to satisfy Congress's purpose behind section 5104 notice, here, VA chose the one thing that it could not do: that is, *nothing* with respect to the notice letter. To reiterate, my position is not that the notice letter must take a specific *form*. VA had many options available to ensure that appellant received section 5104-

---

[35] *Ante* at 13-14.

[36] *See* R. at 7784 (January 2002 letter), 7399 (May 2005 letter), 7214 (October 2008 letter), 7168 (June 2009 letter), and 5036 (September 2012 letter).

[37] H.R. Rep. 115-135 at 99.

compliant notice, whether that be noting in the notice letter that the rating decision would discuss the eight elements that section 5104 mandates or including its discussion of those elements in the notice letter, rather than the rating decision, or including some sort of enclosure that dealt with the issue. As stated above, I agree with my colleagues that VA is in the best position to determine the manner in which it provides notice. But under the plain language of the statute, and given the relevant legislative history, it cannot be that making *no* changes to the notice letter after the passage of the AMA and relying entirely on changes to the decision itself complies with section 5104. Therefore, I would hold that the January 2019 notice letter here did not comply with section 5104.[38]

Finally, this brings us to the appropriate remedy in this matter. To begin with, it is difficult to conclude that VA's failure to provide appellant with proper notice was harmless. In my view, to do so would require the Court to engage in too much fact-finding and to guess about what appellant might have done had VA provided notice compliant with section 5104.[39] So, I agree with the majority that remand is warranted, even though I reach that conclusion on a different basis. One might think that I would advocate for a more "powerful" remedy with instructions to VA to take certain actions. That is not the case. Although I believe that the notice VA provided here was inadequate as a matter of law, I would not direct how the Board should proceed to remedy that defective notice. First, the Board granted higher ratings for appellant's knee injury in the decision before us. The Board should address in the first instance how to handle those favorable findings in conjunction with remedying the notice defect here. Second, in answering the general question of AMA-compliant notice, it is important to consider the Agency's views on the precise contours of a remedy. So, I conclude there are prudential reasons to allow the Board to address these matters in the first instance. Thus, I would remand this matter for the Board to address the deficiencies in the notice letter that accompanied the rating decision, in light of the favorable findings in the May

---

[38] Judge Toth suggests in his concurring opinion that it would not make sense for Congress to have required the Agency to provide information in the notice letter that is "duplicative" of information contained in the decision. *See post* at 28-29 (Toth, J., concurring). I don't disagree with that point. As I've noted, Congress left much to VA's discretion in terms of how to comply with Congress's desire that the notice highlight information that is of particular significance in the decision. I suppose VA could have elected to repeat verbatim information in the notice that was also contained in the decision. That strikes me as an odd way to effectuate congressional intent, but it would be permissible. It seems to me that the Agency could have done many more practical things to accomplish what Congress directed, such as the approaches I've mentioned earlier in this opinion. To repeat, however, what VA can't do in my view is leave the notices it provides to claimants unchanged. So, I respectfully disagree with how my friend Judge Toth sees the issue before us in this appeal.

[39] *See Tadlock v. McDonough*, 5 F.4th 1327, 1337-38; *see also Slaughter v. McDonough*, 29 F.4th 1351, 1355 (Fed. Cir. 2022).

2020 Board decision, and to craft a specific remedy that will protect appellant's due process right as well as the favorable determinations the Board has already rendered.

I won't repeat myself at this point in terms of a summary. In short, because I cannot agree with the majority's decision to allow VA to evade what Congress commanded when it amended section 5104 in the AMA, I respectfully concur only in the judgment in this appeal.

TOTH, *Judge*, *concurring*: I join Judge Falvey's opinion in full and write separately only to pick up the trail of some important questions raised by Judge Allen in his concurrence. I share the view that Congress updated 38 U.S.C. § 5104 to expand (or at least enshrine into statute) the scope of information that VA must communicate about its decision to a veteran; I part ways from my friend Judge Allen insofar as I see nothing in section 5104 to suggest that Congress sought to require VA to provide duplicative information to a claimant across multiple documents. In short, I read section 5104 as increasing *information*, not paperwork.

The term "notice" has a long pedigree and has been used across so many contexts in the law that it's scarcely possible to distill it down to a single definition. *Black's Law Dictionary*'s treatment spans three pages and includes dozens of entries showing how the term has been used throughout the law. The following entry comes nearest to providing a workable, comprehensive definition: "A person has notice of a fact or condition if that person has (1) actual knowledge of it; (2) has received information about it; (3) has reason to know about it; (4) knows about a related fact; or (5) is considered as having been able to ascertain it by checking an official filing or recording." BLACK'S LAW DICTIONARY, 1164 (9th ed. 2009).

What's clear is that the focus of the definition centers on the transmission of knowledge or information: "actual knowledge," "information," "reason to know," "knows about," "able to ascertain." *Id*. This stands in marked contrast to the limited recognition of anything related to form. Observe that form is only mentioned in passing as a secondary consideration ("official filing or recording") that allows a person to "ascertain" the particular fact or condition that is the subject of the notice. *Id*. And this is consistent with how the courts have traditionally treated notice issues across various contexts. *See, e.g.*, *Pereira v. Sessions*, 138 S. Ct. 2105, 2115 (2018) ("Conveying such time-and-place information . . . is the essential function of a notice to appear . . . ."). To the extent that requirements of form are relevant at all, they serve to resolve evidentiary uncertainty

28

and prevent needless collateral litigation about whether the relevant information was actually received.

This long windup serves a simple point: Congress is well-aware of how the term "notice" is generally understood and provided not even the slightest hint in section 5104 that it sought to depart from that usage. When Congress uses a term with a substantial history and provides no indication that it uses the term differently, it's fair to presume that it intends to apply the traditional meaning. *See Sekhar v. United States*, 570 U.S. 729, 733 (2013) ("[I]f a word is obviously transplanted from another legal source, whether from common law or other legislation, it brings the old soil with it."). Relatedly, where Congress intends to restrict the scope of a particular term, it introduces that word with limiting language. *See, e.g.*, *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2071–72 (2018). Here, there's simply no indication that Congress sought to limit notice to include *only* information conveyed in a document entitled "Notice" that must stand separate and apart from all other information provided in other documents.

And this makes sense: What ultimately matters is whether the information Congress required VA to communicate in section 5104 is conveyed with sufficient clarity that a claimant understands how VA adjudicated the case and so can challenge any error in the ruling on appeal. This requires the notice VA provides to be easy enough to locate and understand—that is, not obscured by cryptic legal jargon or buried under a sea of dates and facts and citations bearing no discernible relevance to the disposition.

With full agreement that section 5104 requires VA to communicate all the required information clearly, the only real dispute here boils down to whether section 5104 requires VA to provide *duplicative* information. Stated differently (and putting to the side thorny questions about any prejudice that might result from a purely formal error), we disagree about what to make of cases where VA clearly conveys all the required information and the only perceivable error relates to the location of the notice—that is, within the decision document itself rather than a separate document entitled "Notice." I see no indication that Congress sought VA to divert substantial resources and fell whole forests to recapitulate the same exact information across multiple documents.